IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

GREGORY WELKER,           )
                          )
    Plaintiff,            )
                          )
v.                        )      CIVIL ACTION NO. 5:13-CV-126 (MTT)
                          )
ORKIN, LLC, formerly Orkin, Inc.,  )
                          )
    Defendant.           )
_____  )

## ORDER

This is an age-based employment discrimination case brought pursuant to the

Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA").  The Plaintiff

also alleges related state law claims for breach of contract, intentional infliction of

emotional distress, and tortious interference with business relations.  Before the Court

are Defendant Orkin LLC's motion to dismiss (Doc. 16) and motion for summary

judgment (Doc. 21).  For the following reasons, both motions are **GRANTED**.[1]

## I.   FACTS

Orkin first hired the Plaintiff as a termite technician at its Macon, Georgia location

in July 1992.  (Doc. 27 at 63:15-22).  He worked there for more than 20 years before

resigning in September 2004 to take a job at another pest control company.  (Doc. 27 at

64:14-17).  Around 2005 or 2006, the Plaintiff started All Pro Gutter & Home Repair, a

---

[1] The Plaintiff has not complied with Local Rule 56 in several respects.  Most significantly, he did not respond to the Defendant's statement of undisputed facts.  Local Rule 56 requires a response to "each of the movant's numbered material facts."  M.D. Ga. L.R. 56.  The rule further provides that "[a]ll material facts contained in the moving party's statement which are not specifically controverted by specific citation to the record shall be deemed to have been admitted[.]"  *Id. See also* Fed. R. Civ. P. 56(e).  Thus, the Plaintiff has admitted the facts contained in the Defendant's statement of undisputed facts, and that alone is grounds to grant the Defendant's motion for summary judgment.  Nevertheless, the Court examines the merits of the motion.

company that performed work such as gutter installation, roof installation, water and termite damage repair, painting, floor repair, and porch construction.[2]  (Doc. 27 at 90:10-91:23, 242:4-24).  All Pro Gutter serviced customers across middle Georgia, in metro Atlanta, and in Tennessee.  It also advertised in the Yellow Pages for Forsyth, Macon, and Warner Robins.  (Doc. 27 at 92:23-94:25).

Orkin rehired the Plaintiff to work as Service Manager in its Macon office in May 2006.  (Doc. 27 at 72:23-25).  On his job application, the Plaintiff indicated he graduated from Clarksville High School and had been convicted of receiving stolen goods in 1988.  (Doc. 22-3 at 3).  By signing the application he acknowledged that the information he provided was "true and complete" and that any misrepresentation or failure to disclose information would subject him to dismissal.  (Doc. 22-3 at 4).  Even so, the Plaintiff did not in fact have a high school diploma or G.E.D., and he failed to reveal he had also been convicted for "selling drugs" when he was 18 or 19 years old.  (Doc. 22-3 at 3-4; Doc. 27 at 13:1-14:18, 60:1-4).  A high school diploma or G.E.D. is a prerequisite to employment at Orkin.  (Doc. 22-4, ¶ 11).  According to Craig Stephens, Orkin's regional manager, he would have fired the Plaintiff if he had discovered the Plaintiff's misrepresentations and lack of credentials.  (Doc. 22-4, ¶¶ 11-12).

Upon his rehiring, the Plaintiff received a copy of Orkin's Field Employee Handbook, which contains a copy of its equal employment opportunity policy.  (Doc. 22-3 at 10).  The handbook states it "is a guideline only that is not the basis of an employment contract" and states further that "[e]mployment is at will."  (Doc. 22-3 at 30).  The Plaintiff signed a document acknowledging this policy and his receipt of the

---

[2] However, the Plaintiff contends All Pro Gutter "was not and is not in the pest control business." (Doc. 25-1, ¶ 13).

handbook in May 2006.  (Doc. 22-3 at 5).  In addition to the Handbook, the Plaintiff was provided with a copy of Orkin's Code of Business Conduct.  Among the topics discussed in that document were Conflicts of Interest.  (Doc. 22-3 at 39-40).  Orkin's Conflicts of Interest policy forbids employees from using company time or assets for personal activities, from being employed by a customer with whom the employee conducts business on behalf of the company, from providing services to any such customer, from taking for himself personally any opportunities discovered through his position or through the use of company property or information, and from competing with the company.  (Doc. 22-3 at 39).  The Plaintiff signed a document acknowledging his receipt of the Code of Business Conduct in May 2006.  (Doc. 22-3 at 32).

The Plaintiff contends his workplace troubles started in July 2009 when Orkin's Macon office was added to the South Carolina region, where Stephens was regional manager.  (Doc. 22-4, ¶¶ 3-4; Doc. 27 at 66:2-9, 70:22-25).  According to the Plaintiff, Stephens began to discriminate against him "[t]he day he walked through the…door."  (Doc. 27 at 28:16-20).  On his first day as regional manager, Stephens allegedly held a meeting in which he told the staff that anyone who had been there for more than ten to fifteen years was "worthless, didn't need to be here, was probably stealing from the company, …[and] was too old to work."[3]  (Doc. 27 at 110:20-111:2).  Also during the meeting, the Plaintiff claims he heard Stephens say "out with the old" and "everyone has been here too long – need to break up the family."  (Doc. 27 at 153:21-154:6, 155:17-25).

---

[3] Stephens denies making *any* of the age-related comments attributed to him by the Plaintiff. (Doc. 22-4, ¶ 19).

The Plaintiff contends Stephens made similar comments on other occasions.  In one instance, Stephens presented an award to two employees and said, "I forgot you guys are so old, I might need to go back and get a wheelchair and pull you up here." (Doc. 27 at 113:23-114:8).  The Plaintiff took Stephens' meaning to be that "[w]e just couldn't do our job because we had just been there so many years and we were worthless…we were too old to do our jobs."  (Doc. 27 at 114:10-15).  In another instance, after the Plaintiff had surgery on his ankle, he says Stephens asked him somewhat jokingly, "Are you going to be able to make it today? You're getting old, you're getting up there."  (Doc. 27 at 159:1-6).  The Plaintiff also alleges Stephens made numerous age-related comments to Buford Whitaker, the branch manager.  (Doc. 27 at 157:21-158:12).  Whitaker also happened to work with the Plaintiff at All Pro Gutter.

In the summer of 2010, Stephens became aware of the All Pro Gutter advertisements in the Yellow Pages.  (Doc. 22-4, ¶ 5).  The advertisements contained the Plaintiff's home and personal cell phone numbers.  The Plaintiff occasionally used the cell phone to communicate with Orkin customers.  (Doc. 27 at 102:19-103:24). Stephens recognized the phone number and knew the Plaintiff conducted Orkin business on that number, which the Plaintiff asserts was a personal number and not a phone provided by Orkin.  (Doc. 22-4, ¶ 6; Doc. 25-1, ¶ 25).  Stephens then questioned employees in the Macon office and concluded that the Plaintiff owned All Pro Gutter, was conducting work for that company when he should have been working for Orkin, and that the potential overlap in services the two companies provided might encourage or pressure Orkin customers to use All Pro Gutter.  (Doc. 22-4, ¶ 7).  The Plaintiff never discussed All Pro Gutter or the Yellow Pages advertisements with Stephens.  (Doc. 27

at 106:3-8).  However, the Plaintiff admits it is "possible" he serviced All Pro Gutter's customers while he was an Orkin employee.  (Doc. 27 at 96:8-11).

Stephens believed the Plaintiff's work with All Pro Gutter violated Orkin's Conflicts of Interest Policy.  As a result, he fired the Plaintiff on August 10, 2010.  (Doc. 22-4, ¶ 8; Doc. 27 at 104:17-20).  The Plaintiff says he was not told he had violated the policy at the time he was fired, nor was he told he was being fired for some age-related reason.  (Doc. 27 at 104:17-25, 165:4-8, 168:8-11).  The Plaintiff was 48 years old when he was terminated.  (Doc. 27 at 39:12-13).  He was replaced by David Gregory, who was 31 at the time.  (Doc. 22-4, ¶¶ 9, 14).  Stephens was also 48 years old when he fired the Plaintiff.  (Doc. 22-4, ¶ 2).

Yet less than a month after his termination, on September 7, 2010, Orkin rehired the Plaintiff.  (Doc. 27 at 121:3-8).  The Plaintiff had been lobbying Whitaker for reinstatement, and Whitaker approached Stephens about bringing the Plaintiff back to the company.  Ultimately, Stephens agreed to approve the Plaintiff's rehiring but only as a Reinspector.  Stephens did not want to place the Plaintiff in a managerial capacity because of his previous violation of company policy.  (Doc. 22-4, ¶ 9; Doc. 27 at 119:11-22).  As a Reinspector, the Plaintiff says he directly solicited new customers for Orkin.  (Doc. 25-1, ¶ 27).  Stephens allegedly "praised [the Plaintiff] about how great of a job [he] did."  (Doc. 27 at 139:12-17).  The Plaintiff also alleges during this time he heard Stephens say "he was cleaning the Macon Branch [and] he had one old fart left to get."  (Doc. 27 at 154:21-22).  The Plaintiff believed Stephens was referring to Whitaker because "that's the oldest old fart at the office."  (Doc. 27 at 155:9-14).[4]  In July 2011,[5]

---

[4] Stephens fired Whitaker on March 14, 2013.  Whitaker was 68.  (Doc. 22-4, ¶ 13).

the Plaintiff filed a charge with the Equal Employment Opportunity Commission alleging his termination in 2010 was prompted by unlawful age-based discrimination.  The Plaintiff voluntarily resigned from Orkin on November 4, 2011.[6]  (Doc. 27 at 126:23-25).

A few months later, on January 12, 2012, the Plaintiff and his wife filed for bankruptcy under Chapter 7 in the United States Bankruptcy Court for this district. (Doc. 16-4).  *See In re Welker*, No. 12-50078 (Bankr. M.D. Ga.).  In his petition, the Plaintiff did not list his pending EEOC charge on his inventory of personal property (Doc. 16-4 at 7-11) or on his statement of financial affairs, which specifically required him to "[l]ist all suits and administrative proceedings to which" he was a party within the prior year (Doc. 16-4 at 29).  The Plaintiff filed an amended inventory of personal property on February 16, 2012 disclosing claims for disability benefits against GEICO and the Social Security Administration, but again he did not reveal his EEOC charge. (Doc. 16-5).   The Bankruptcy Trustee filed a Report of No Distribution on February 24, 2012 (Doc. 16-6 at 3) and an Order of Discharge was entered in the case on April 17, 2012 (Doc. 16-7).

---

[5] This is according to the official EEOC Charge of Discrimination form signed by the Plaintiff on July 18 and stamped as received on July 19.  (Doc. 16-2).  The Plaintiff contends he filed his charge on January 31, 2011 when he submitted a charge letter on his attorney's stationary that was stamped as received by the EEOC on that date.  (Doc. 1, ¶ 10; Doc. 18-1).  Regardless of who is correct, the significant point is that the Plaintiff filed the charge in 2011 prior to filing his bankruptcy petition in January 2012.  Additionally, although there appears to be a dispute as to when a "charge" was filed, Orkin has not argued the charge was untimely in relation to the alleged discriminatory conduct.  *See e.g.*, *Sheffield v. United Parcel Service, Inc.*, 403 F. App'x 452, 454 (2010) (observing the non-jurisdictional prerequisite that an EEOC charge must be filed within 180 days of the discriminatory act).

[6] He contends that others who resigned after him, including David Gregory at age 34, Keith King at age 40, Brandon Gassett at age 27, and Troy Solomon at age 40, did so because they were "fixing to be fired" by Stephens.  (Doc. 22-4, ¶¶ 14-17; Doc. 27 at 134:2-21).

After the EEOC closed its file on the Plaintiff's case, the Plaintiff filed this lawsuit on April 3, 2013 seeking damages and injunctive relief in the form of reinstatement for unlawful age-based discrimination pursuant to the ADEA.  (Doc. 1, ¶ 11; Doc. 1-1).  He also alleged state law claims for breach of contract, intentional infliction of emotional distress, and tortious interference with business relations.  (Doc. 1, ¶¶ 23-30).

## II.  DISCUSSION

Before discovery ended, Orkin moved to dismiss the Plaintiff's complaint based on the judicial estoppel doctrine because the Plaintiff had not revealed his discrimination claims during his bankruptcy proceedings.  (Doc. 16-1).  Because the judicial estoppel doctrine bars recovery of damages but does not preclude equitable relief, favorable adjudication of the motion would not have disposed of the entire case, and the Court postponed its ruling until the dispositive motion deadline passed.  Now that Orkin has moved for summary judgment (Doc. 21), the Court addresses each of its motions in turn.

### A.  Orkin's Motion to Dismiss

Orkin contends that judicial estoppel bars the Plaintiff from bringing his discrimination claims.  Judicial estoppel is an equitable doctrine that prevents a party from "asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding."  *Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1273 (11th Cir. 2010) (internal quotations and citation omitted).  The Eleventh Circuit has identified two primary factors for establishing the bar of judicial estoppel.  "First, it must be shown that the allegedly inconsistent positions were made under oath in a prior proceeding.  Second, such inconsistencies must be shown to have been calculated to make a mockery of the judicial system."  *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d

1282, 1285 (11th Cir. 2002) (internal quotations and citation omitted).  These factors are not exhaustive, and the Court must "give due consideration to the circumstances of the particular case."  *Robinson*, 595 F.3d at 1273.

Regarding the first factor, the Plaintiff's failure to disclose his discrimination claim in his bankruptcy petition amounts to the taking of inconsistent positions under oath.  "A debtor seeking shelter under the bankruptcy laws has a statutory duty to disclose all assets, or potential assets to the bankruptcy court."  *Id.* at 1274 (citing 11 U.S.C. §§ 521(1), 541(a)(7)).  "The duty to disclose is a continuing one that does not end once the forms are submitted to the bankruptcy court; rather the debtor must amend [his] financial statements if circumstances change."  *Id.* (internal quotations and citation omitted).  This duty applies to both Chapter 13 and Chapter 7 bankruptcy proceedings.  *Id.*  That the Plaintiff had not actually filed this lawsuit prior to or during the course of his bankruptcy does not matter; the fact that he had filed an EEOC charge is enough.  The Plaintiff's EEOC charge, submitted months before he filed for bankruptcy, constitutes an asset the Plaintiff was required to disclose in his bankruptcy petition.  *Casanova v. Pre Solutions, Inc.*, 228 F. App'x  837, 841 (11th Cir. 2007).  *See also De Leon v. Comcar Indus., Inc.*, 321 F.3d 1289 (11th Cir. 2003) (applying judicial estoppel doctrine to bar plaintiff's discrimination claims where plaintiff filed an EEOC charge nearly a year prior to filing bankruptcy petition and failed to disclose his discrimination claims).  Thus, the Plaintiff took a position under oath in his bankruptcy proceeding inconsistent with his asserted claim in this case.

The second *Burnes* factor relates to intent.  When considering a party's intent for the purpose of judicial estoppel, the Eleventh Circuit requires "intentional contradictions, not simple error or inadvertence."  *Robinson*, 595 F.3d at 1275 (internal quotations and

citation omitted).  Intent may be inferred from a "debtor's failure to satisfy its statutory disclosure duty," but such an inference is improper if "the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment."  *Barger v. City of Cartersville*, 348 F.3d 1289, 1296 (11th Cir. 2003).  "When reviewing potential motive, the relevant inquiry is intent at the time of non-disclosure."  *Robinson*, 595 F.3d at 1276.

Here, the Plaintiff admits he knew about his discrimination claims at the time he filed his EEOC charge.  (Doc. 18 at 7).  Yet he made no effort to amend his bankruptcy petition to reflect this.  Although the Plaintiff denies a motive to conceal the claims, the Eleventh Circuit has held that intent to make a mockery of the judicial system can be inferred by the Court when the debtor "knew about his claim and possessed a motive to conceal it because his amount of repayment would be less."  *Comcar Indus., Inc.*, 321 F.3d at 1292; *Robinson*, 595 F.3d at 1275 (affirming district court's finding that debtor had a motive to conceal her claim because she could have kept "any proceeds from the suit ... for herself without their becoming part of the bankruptcy estate and going to her creditors to satisfy her debts").  The nondisclosure need not lead to a different result in the bankruptcy proceeding; "the motive to conceal stems from the possibility of defrauding the courts and not from any actual fraudulent result."  *Robinson*, 595 F.3d at 1275 (citation omitted).  In this case, the Plaintiff had a motive to conceal his age discrimination claim because if he prevailed on that claim or in this lawsuit, he could have kept any proceeds for himself without the bankruptcy court's knowledge.  Thus, the second part of the judicial estoppel test is satisfied.

Because the Plaintiff took inconsistent positions under oath and because the Court can infer his intent to make a mockery of the judicial system, equity demands that he be estopped from pursuing claims for damages in this case.  The Plaintiff has not

identified any specific circumstances that make the application of this doctrine inappropriate.  And even if he could, as demonstrated below, the Plaintiff cannot succeed on the merits of his case.

Accordingly, Orkin's motion is **GRANTED**, and the Plaintiff's claims for damages are barred by judicial estoppel.

## B. Orkin's Motion for Summary Judgment

### 1. Summary Judgment Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A factual dispute is not genuine unless, based on the evidence presented, "a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).  The movant must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A).

The burden then shifts to the non-moving party, who must rebut the movant's showing "by producing…relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  The non-moving party does not satisfy its burden "if the rebuttal evidence is merely colorable, or is not significantly probative of a disputed fact."  *Id.* (quoting *Anderson*, 477 U.S. at 249-50). However, "credibility determinations, the weighing of the evidence, and the drawing of

legitimate inferences from the facts are jury functions, not those of a judge. … The

evidence of the non-movant is to be believed, and all justifiable inferences are to be

drawn in [its] favor." *Anderson*, 477 U.S. at 255.

### 1. Analysis

#### a. The Plaintiff's ADEA Claim

##### 1) McDonnell Douglas Framework

An ADEA plaintiff may prove his case directly or circumstantially.  Although the

Plaintiff claims Stephens made several age-based comments during the time he worked

at Orkin, he does not argue there is direct evidence that his termination was based on

age.  Rather, he relies only on the framework provided by *McDonnell Douglas Corp. v.*

*Green* for using circumstantial evidence to establish a prima facie case of

discrimination.  411 U.S. 792 (1973).[7]  *See also Chapman v. AI Transport*, 299 F.3d

1012, 1024 (11th Cir. 2000) (applying *McDonnell Douglas* to evaluate ADEA claim).

Under *McDonnell Douglas*, a plaintiff must first establish a prima facie case of

discrimination.  If a plaintiff establishes a prima facie case of discrimination, the burden

of production, but not the burden of persuasion, shifts to the employer to articulate a

legitimate, nondiscriminatory reason for the employment action.  *Texas Dept. of Cmty.*

*Affairs v. Burdine*, 450 U.S. 248, 254-55 (1981).  This burden of production means the

---

[7] The Court recognizes that establishing the *McDonnell Douglas* elements is not "the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011).  A plaintiff can always avoid summary judgment by creating a triable issue concerning the employer's discriminatory intent.  A plaintiff does this by presenting "'a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker.'"  *Id.* (quoting *Silverman v. Bd. Of Educ.*, 637 F.3d 729, 734 (7th Cir. 2011)).  However, in this case the Plaintiff has not presented "a convincing mosaic of circumstantial evidence" that the Defendant acted with discriminatory intent.

employer "need not persuade the court that it was *actually* motivated by the proffered reasons," but must produce evidence to raise a genuine factual dispute as to whether it discriminated against the plaintiff.  *Kragor v. Takeda Pharm. Am., Inc.*, 702 F.3d 1304, 1308 (11th Cir. 2012) (emphasis added).

A plaintiff then has the opportunity to show that the employer's stated reason is in fact pretext for discrimination.  "The plaintiff can show pretext 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'"  *Id.* at 1308 (quoting *Burdine*, 450 U.S. at 256).  Put another way, "a plaintiff can survive a motion for summary judgment…simply by presenting evidence sufficient to demonstrate a genuine issue of material fact as to the truth or falsity of the employer's legitimate, nondiscriminatory reasons."  *Evans v. McClain of Ga., Inc.,* 131 F.3d 957, 965 (11th Cir. 1997).

## 2)  The Plaintiff's Termination

Under the ADEA, it is unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  "To make out a prima facie case of age discrimination, the plaintiff must show four things: (1) that [he] was a member of the protected group of persons between the ages of forty and seventy; (2) that [he] was subject to adverse employment action; (3) that a substantially younger person filled the position that [he] sought or from which [he] was discharged; and (4) that [he] was qualified to do the job for which [he] was rejected."  *Kragor*, 702 F.3d at 1308 (quoting *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1359 (11th Cir. 1999)) (quotation marks omitted).

Orkin concedes the Plaintiff was a member of a protected age group, subject to an adverse employment action, and replaced by a substantially younger person.  (Doc. 22 at 3 n.2).  But it contends the Plaintiff cannot make out his prima facie case because he was not qualified for his job.  Specifically, Orkin argues the Plaintiff was unqualified because he did not possess a high school diploma or GED.  (Doc. 22 at 3-4).  However, as to his ability to make out a prima facie case – where "[the] plaintiff's burden … is light" – Orkin's argument is unpersuasive.  *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1432 (11th Cir. 1998).  Orkin employed the Plaintiff for more than 25 years, including four years in the position from which he was fired, and the company has offered no evidence that his work was ever unsatisfactory or performed in a way that suggests he was not qualified for his duties.  Stephens's bald assertion that "[a] high school diploma or G.E.D. is a prerequisite to employment at Orkin," without further elaboration or evidentiary support, does not establish an objective, company-wide standard that renders the Plaintiff unqualified as a matter of law.[8]  (Doc. 22-4, ¶ 11).

As to Orkin's legitimate, nondiscriminatory reason for firing the Plaintiff, the company points to his work with All Pro Gutter.  Specifically, Orkin contends its decision was based on Stephens's determination that the Plaintiff was working for All Pro Gutter when he should have been working for Orkin, that the potential overlap in services the two companies provided might pressure Orkin customers to use All Pro Gutter, and his belief that the Plaintiff's work with All Pro Gutter violated Orkin's Conflicts of Interest Policy.  (Doc. 22-4, ¶¶ 6-8).

---

[8] To the extent Orkin contends it "would have immediately terminated [the Plaintiff's] employment" (Doc. 22 at 4) had the company known he lacked these credentials, its argument is more appropriately made in explaining why the Plaintiff should not be reinstated and would not be entitled to front pay.  The Court addresses this issue below.

Because Orkin has offered a legitimate, nondiscriminatory reason for its conduct, the Plaintiff has the opportunity to present evidence that this reason is pretext for discrimination.[9]  *Kragor*, 702 F.3d at 1308 n.1.  He contends Stephens's decision "was based subjectively on his purported interpretation of the conflict of interest policy in the Business Code of Conduct."  (Doc. 25 at 8).  He then questions whether All Pro Gutter was in fact a conflict of interest because the Plaintiff formed the company with two other Orkin employees and Orkin "knew or reasonably should have known All Pro was operating."  (Doc. 25 at 8).  Finally, the Plaintiff rhetorically asks why he would be rehired at a position that he alleges involves greater customer contact than his previous position if Stephens was truly concerned about the conflict of interest issues All Pro Gutter created.  (Doc. 25 at 8).

In questioning whether All Pro Gutter *actually* created a conflict of interest under company policy, the Plaintiff is simply quarreling with the wisdom of Stephens's decision.  This he cannot do.  *See Chapman*, 229 F.3d at 1030 ("A plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer.  Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it[.]"); *Elrod v. Sears, Roebuck and Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991) ("Federal courts do not sit as a super-personnel department that reexamines an entity's business decisions.  No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, …

---

[9] Contrary to Orkin's argument, the Plaintiff does not have to show "both that the reason was false *and* that discrimination was the real reason for his termination."  (Doc. 22 at 5) (emphasis added).  That is, he may survive summary judgment without proving intentional discrimination. *See, e.g., Williams v. Ga. Pub. Safety Training Ctr.*, 2013 WL 4505816, at *3 n.13 (M.D. Ga.).

[the Court's] inquiry is limited to whether the employer gave an honest explanation of its behavior."). Orkin has explained that Stephens fired the Plaintiff because Stephens believed the Plaintiff had violated the company's conflict of interest policy. Although the Plaintiff may disagree with the wisdom of this reason and may not believe his conduct created a conflict of interest under the policy, he has not cited any evidence that Stephens was not actually concerned this conflict existed or that a reasonable employer would not be motivated to fire an employee believed to be violating Orkin's conflict of interest policy.

The Plaintiff appears to contend that Orkin had some knowledge of All Pro Gutter prior to deciding to fire him. He makes this argument in passing in his brief without citing to any evidence, although he does state in an affidavit that "the entire time I worked at Orkin, Orkin was aware of All Pro Gutter." (Doc. 25-1, ¶ 17). But the Plaintiff does not contend that Stephens himself knew this, or if he did, that Stephens had any prior understanding of the services All Pro Gutter offered or how it operated. Stephens's testimony indicates he did not learn of All Pro Gutter until the summer of 2010 when he became aware of the Yellow Pages advertisements, and the Plaintiff has not specifically disputed this. (Doc. 22-4, ¶ 5). Moreover, the Plaintiff himself testified that he never discussed All Pro Gutter with Stephens. (Doc. 27 at 106:3-8).

The Plaintiff additionally alleges that Stephens's decision to rehire him a month after firing him is suspicious because it suggests Stephens was no longer concerned about a conflict of interest. Presumably, the Plaintiff intends to further imply Stephens was unconcerned about a conflict in the first place. But although Stephens agreed to rehire the Plaintiff – after some persuasion by Whitaker – he did so at a non-managerial position because of the Plaintiff's policy violation. (Doc. 22-4, ¶ 9). This is evidence of

both Stephens's lack of trust in the Plaintiff and his desire to punish the Plaintiff's conduct. Even if Stephens later decided he was mistaken to think the Plaintiff's conduct constituted a violation of the conflict of interest policy, that is not evidence Stephens did not believe there was a conflict at the time he fired the Plaintiff. And if Stephens rehired the Plaintiff merely to cover up an unlawful termination, it is unlikely he would have placed the Plaintiff in an inferior position. Thus, the Plaintiff's rehiring to a lower position supports rather than undermines the credibility of the Defendant's nondiscriminatory reason for firing him in the first place, and it is insufficient evidence of pretext.

Beyond these arguments, the Plaintiff barely addresses the significance of Stephens's alleged age-related comments. But even if Stephens made the statements the Plaintiff attributes to him, he did not make these statements in connection with his decision to fire the Plaintiff for violating the conflict of interest policy.[10] Indeed, there is no evidence Stephens made *any* age-related statements when deciding to fire the Plaintiff. This is significant because "statements by decisionmakers unrelated to the decisional process" do not support an employee's showing of pretext. *Steger v. Gen. Elec. Co.*, 318 F.3d 1066, 1079 (11th Cir. 2003) (quoting *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989) (O'Connor, J. concurring)) (internal quotation marks omitted). *See also Scott v. Suncoast Beverage Sales, Ltd.*, 295 F.3d 1223, 1229 (11th Cir. 2002) ("Although a comment unrelated to a termination decision may *contribute* to a circumstantial case for pretext, it will usually not be sufficient absent some additional evidence supporting a finding of pretext." (internal citation omitted)); *Rojas v. Florida*,

---

[10] The Court does not suggest that comments such as those the Plaintiff claims Stephens made are always of no consequence. If the Plaintiff had offered some evidence, or even some argument, that Stephens's statements were suggestive of pretext, perhaps the situation would be different.

285 F.3d 1339, 1342-43 (11th Cir. 2002) (finding that supervisor's remark that plaintiff's coworker did not deserve her job because she was a woman was unrelated to the decision to fire the plaintiff and insufficient to establish pretext); *Ritchie v. Indus. Steel, Inc.*, 426 F. App'x 867, 874 (11th Cir. 2011) (decision makers frequently referred to the plaintiff as "old man" and made comments about his age, but these statements were not linked to his termination decision and there was no evidence the decision makers expressed a preference for younger employees or believed the plaintiff could not do his job because of his age).

In this case, of all the age-related comments Stephens allegedly made, the only ones connected to a specific date are Stephens's statements during his first meeting with employees in 2009, more than a year before the Plaintiff was terminated.  (Doc. 27 at 110:20-111:2, 153:21-154:6, 155:17-25).  The Plaintiff does not say when any of Stephens's other age-related comments were made, but there is no indication any of them were offered in a time or context that suggests a relation to the Plaintiff's discharge.  When Stephens fired the Plaintiff, he said nothing to indicate the Plaintiff's age was motivation for his decision.  (Doc. 27 at 165:4-8, 168:8-11).  It would be odd if he did: the Plaintiff is younger than Stephens by nine months.  (Doc. 22-4, ¶ 2; Doc. 27 at 39:12-13).  *See also Elrod*, 939 F.2d at 1471 (a plaintiff faces a difficult burden when the primary player behind his termination is over age 40 and within the class of persons protected by the ADEA).  In short, it is clear that even if Stephens made each of the remarks as alleged by the Plaintiff, they were entirely unrelated to the decisional process that led to the Plaintiff's firing.

Finally, even if the Plaintiff were able to create a jury question as to the existence of an improper motivation behind his firing, the issue would be moot because the

Plaintiff has no available remedy.  As discussed above, judicial estoppel bars the Plaintiff from obtaining damages in this case.  Moreover, because of facts Orkin obtained during discovery, it is clear the after-acquired evidence doctrine[11] provides the Plaintiff no equitable recourse for the alleged discrimination.  Under that doctrine, evidence of an employee's wrongdoing obtained after his termination limits the specific remedy available to him – even assuming the sole motivation for his firing was unlawful. *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 359-60 (1995).  The employee's conduct is relevant not for punitive purposes but to give effect to "the lawful prerogatives of the employer in the usual course of its business and the corresponding equities that it has arising from the employee's wrongdoing."  *Id.* at 361.  Thus, neither reinstatement nor front pay are appropriate remedies when the employer establishes the employee's wrongdoing was so severe that the employee would have been fired on those grounds alone if the employer had known of it at the time.  *Id.* at 361-63.

In this case, the Plaintiff during his deposition admitted he had no high school diploma or G.E.D. and that he had a criminal conviction for "selling drugs."  (Doc. 27 at 13:1-14:18, 60:1-4).  Yet on his application for the job from which he was fired, the Plaintiff claimed to have graduated high school and did not report a drug conviction when asked about his criminal history.[12]  (Doc. 22-3 at 3-4).  Had Stephens known these facts, he would have fired the Plaintiff for his misrepresentations and lack of credentials.  (Doc. 22-4, ¶¶ 11-12).  Additionally, the employment application the Plaintiff completed required him to sign an acknowledgment that "any misrepresentation

---

[11] Orkin pled this affirmative defense in its answer to the Plaintiff's complaint.  (Doc. 4 at 8).

[12] He reported only a conviction for "receiving stolen goods."  (Doc. 22-3 at 3).

of information or failure to disclose information during the employment application process may disqualify me from further consideration for employment and, if employed, will subject me to dismissal." (Doc. 22-3 at 4). *See also Wallace v. Dunn Const. Co., Inc.*, 62 F.3d 374, 379 (11th Cir. 1995) ("[T]he after-acquired evidence rule announced in *McKennon* applies to cases in which the after-acquired evidence concerns the employee's misrepresentations in a job application…"). Consequently, because he lied on his job application and would have been fired anyway had Orkin known about this wrongdoing, the Plaintiff cannot compel Orkin to reinstate him even if his age unlawfully prompted his termination.

Because the Plaintiff has not cited evidence sufficient to create a genuine dispute as to the existence an unlawful, age-based motivation for his firing, Orkin is entitled to summary judgment on his ADEA claim. Moreover, even if the Plaintiff was able to raise a question for the jury regarding the impact of age on his termination, judgment for Orkin would still be appropriate because the combined effect of judicial estoppel and the after-acquired evidence doctrine eliminates any damages or equitable remedies available to him.

### b. The Plaintiff's State Law Claims

In his complaint, the Plaintiff also alleged claims for breach of contract, intentional infliction of emotional distress, and tortious interference with business relations. (Doc. 1). Although Orkin has moved for summary judgment on these claims, the Plaintiff has mustered a mere two paragraphs in response that are devoid of any legal or factual citations. (Doc. 25 at 10). The Court is tempted to find that these claims

have been abandoned.  However, assuming they have not been, the claims fail as a matter of law.[13]

### 1) Breach of Contract

In his complaint, the Plaintiff alleges Orkin violated "a printed policy prohibiting unlawful discrimination based on age."  (Doc. 1, ¶ 24).  The Plaintiff has not offered any such policy into evidence.  Orkin construes this claim as alleging that when it terminated the Plaintiff's employment, Orkin breached the Equal Employment Opportunity, Diversity, and Respect Policies set forth in its Field Employee Handbook.  (Doc. 22 at 12; Doc. 22-3 at 6).  However, "[a]n employee manual setting forth certain policies and information concerning employment is not necessarily viewed as a contract."  *Tackett v. Ga. Dept. of Corr.*, 304 Ga. App. 310, 312, 696 S.E.2d 359, 362 (2010) (quoting *Ellison v. DeKalb Cnty.*, 236 Ga. App. 185, 186, 511 S.E.2d 284, 285 (1999)) (internal quotation marks omitted).  At best, only provisions in an employee manual relating to additional compensation plans may amount to a binding contract between the parties.  *Id.*  Even "personnel manuals stating that employees can be terminated only for cause and setting forth termination procedures are not contracts of employment [, and] failure to follow the termination procedures contained in them is not actionable."  *Id.* (citation omitted).  Nothing in Orkin's discrimination policy relates to compensation.

Of further significance is the fact that the Field Employee Handbook expressly states that it "is a guideline only [and] is not the basis of an employment contract."  (Doc. 22-3 at 30).  *See also Ellison*, 236 Ga. App. at 186, 511 S.E.2d at 285 ("Moreover, the employee manual itself suggests that it does not impose binding contractual

---

[13] Moreover, under the judicial estoppel doctrine, the Plaintiff cannot obtain damages for these claims.

obligations…"); *Gale v. Hayes Microcomputer Prods.*, 192 Ga. App. 30, 30, 383 S.E.2d 590, 591 (1989) ("[T]he employee handbook by its specific terms was not a contract…"). Moreover, the Field Employee Handbook informed the Plaintiff his "employment is at will."  (Doc. 22-3 at 30).

Clearly, the Equal Employment Opportunity, Diversity, and Respect Policies did not create an employment contract, so there was no contract Orkin could breach.  The Plaintiff's claim therefore fails as a matter of law.

## 2)  Intentional Infliction of Emotional Distress

To prevail on a claim for intentional infliction of emotional distress, the Plaintiff's burden is "stringent."  He must demonstrate that:

> (1) the conduct giving rise to the claim was intentional or reckless; (2) the conduct was extreme and outrageous; (3) the conduct caused emotional distress; and (4) the emotional distress was severe. The defendant's conduct must be so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Whether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law.

*Steed v. Fed. Nat. Mortg. Corp.*, 301 Ga. App. 801, 810, 689 S.E.2d 843, 851-52 (2009) (citation omitted).  *See also Roddy v. City of Villa Rica, Ga.*, 536 F. App'x 995, 1003 (11th Cir. 2013).  Moreover, "Georgia courts have held that an employer's termination of an employee – however stressful to the employee – generally is not extreme and outrageous conduct."  *Roddy*, 536 F. App'x at 1003 (quoting *Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1229 (11th Cir. 1993)) (internal quotation marks omitted).

The Plaintiff has not cited anything in the record to suggest he faced extreme and outrageous conduct.[14]  Although the Plaintiff was fired, he "was not subjected to any abuse or otherwise treated with disrespect."  *Coats & Clark*, 990 F.2d at 1229.  Termination alone is not "extreme and outrageous conduct" that will support a claim of intentional infliction of emotional distress.  *Roddy*, 536 F. App'x at 1003.  This is true even taking into account comments the Plaintiff alleges Stephens made about his age or in connection with his firing.  *See, e.g.*, *Lockhart v. Marine Mfg. Corp.*, 281 Ga. App. 145, 147, 635 S.E.2d 405, 407 (2006) ("Comments made within the context of one's employment may be horrifying or traumatizing, but are generally considered a common vicissitude of ordinary life….[Outrageous conduct] does not include mere insults, indignities, threats, annoyances, petty oppressions, or other vicissitudes of daily living.  Plaintiffs are expected to be hardened to a certain amount of rough language and to occasional acts that are definitely inconsiderate and unkind.") (citation omitted).

Nor does the Plaintiff cite to evidence to support allegations in his complaint that he experienced an "intense feeling of anxiety, depression, and extreme outrage" or had "higher blood pressure, trouble sleeping, weight gain, and related problems associated with stress" because of his firing.  (Doc. 1, ¶ 27).  And even if he had, the Plaintiff does not establish that the distress he suffered was "severe."  *See, e.g.*, *Roddy*, 536 F. App'x at 1003 (depression, loss of sleep, and frustration with job loss is not "severe"); *Jones v. Fayette Family Dental Care, Inc.*, 312 Ga. App. 230, 233-34 & n.14, 718 S.E.2d 88, 91 (2011) (anxiety, nervousness, sleeplessness, weight gain, and irritability that would

---

[14] Indeed, the Plaintiff's only mention of this claim in his response brief is that the claim is "supported by his deposition where he clearly articulates the emotional distress he has suffered as a result of his termination…."  (Doc. 25 at 10).

normally be experienced following job loss is insufficiently severe to sustain a claim for emotional distress).  In fact, when confronted with medical records at his deposition, the Plaintiff conceded that he has never been diagnosed with high blood pressure, he has never been treated for trouble sleeping, he has not suffered any panic attacks in the past three years, and he never discussed with his physician the fact he had been fired or that his firing caused him distress.  (Doc. 27 at 198:10-201:11).

Consequently, the Plaintiff's claim for intentional infliction of emotional distress must fail as a matter of law.

### 3)  Tortious Interference With Business Relations

To maintain a claim for tortious interference with business relations, a plaintiff must prove:

> (1) improper action or wrongful conduct by the defendant without privilege;
> (2) the defendant acted purposely and with malice with the intent to injure;
> (3) the defendant induced a breach of a contractual obligation or caused a party or a third party to discontinue or fail to enter into an anticipated relationship with the plaintiff; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff.

*Onbrand Media v. Codex Consulting, Inc.*, 301 Ga. App. 141, 150, 687 S.E.2d 168, 176 (2009).  Moreover, to be liable, the defendant "must be a stranger" to the relationship; that is, parties to a relationship cannot be liable for tortious interference with that relationship.  *See id.* (citation omitted).  *See also H&R Block Eastern Enters., Inc. v. Morris*, 606 F.3d 1285, 1295 (11th Cir. 2010) ("[I]t is well-established under Georgia law a party cannot tortiously interfere with its own business relationships").

In this case, the Plaintiff alleges Orkin "tortuously interfered with the employee's employment package with the Defendant."  (Doc. 1, ¶ 29).  That is, he complains that Orkin disrupted the relationship it had with him – a relationship to which it was not a

stranger.  This cannot sustain a claim for liability.  In his deposition, the Plaintiff also implies Orkin interfered with his relationship with Orkin customers.  (Doc. 27 at 204:13-25).  But he has offered no argument or evidence as to how he has satisfied any of the elements of a tortious interference claim.  In any event, Orkin customers are *Orkin's* customers, not the Plaintiff's customers.  So even if the Plaintiff could prove the elements of a tortious interference claim, no liability attaches to Orkin because it is not a stranger to its relationship with its own customers.

Accordingly, the Plaintiff's claim for tortious interference with business relations fails as a matter of law.

### III. CONCLUSION

For the foregoing reasons, Orkin's motion to dismiss (Doc. 16) the Plaintiff's claims for damages and its motion for summary judgment (Doc. 21) are **GRANTED**.

**SO ORDERED**, this 17th day of April, 2014.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT